106 T.C. No. 2


UNITED STATES TAX COURT


JAMES E. REDLARK AND CHERYL L. REDLARK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4445-94.                    Filed January 11, 1996.


        Ps deducted the amount of interest on the portion
of a deficiency in Federal income tax arising out of
adjustments caused by accounting errors of their
unincorporated business.  They claimed that the
interest was properly allocable to business
indebtedness and therefore not personal interest under
sec. 163(h)(2)(A), I.R.C.   R disallowed such deduction
on the ground that it was personal interest under sec.
1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., 52
Fed. Reg. 48409 (Dec. 22, 1987), and limited Ps' total
interest deduction to the amounts allowed by sec.
163(h)(5), I.R.C.  <u>Held</u>, sec. 1.163-9T(b)(2)(i)(A),
Temporary Income Tax Regs., is invalid insofar as it
applies under the circumstances involved herein.  <u>Held,
further</u>, the amount of the interest so allocated by Ps
is deductible as interest on an "indebtedness properly
allocable to a trade or business" within the meaning of
sec. 163(h)(2)(A), I.R.C.

Clare Golnick, for petitioners.

Paul L. Dixon, for respondent.

OPINION

TANNENWALD, Judge: Respondent determined deficiencies in petitioners' 1989 and 1990 Federal income taxes in the amounts of $46,409 and $6,927, respectively. The issue in dispute is whether petitioners may deduct certain interest on Federal income tax deficiencies, paid by petitioners in 1989 and 1990, where the deficiencies arose in part due to a correction for errors made in computing petitioners' income from their business.

All the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Background

At the time the petition was filed, petitioner James E. Redlark was a resident of Palm Springs, California, and petitioner Cheryl L. Redlark was a resident of South Lake Tahoe, California.

Respondent examined petitioners' Federal income tax returns for 1979, 1980, 1981, 1982, 1983, 1984, and 1985, following which respondent and petitioners agreed to adjustments to petitioners' income for each of the years.

The adjustments were due in part to a correction for errors made in converting petitioners' revenue from Carrier Communications, petitioners' unincorporated business, from an

accrual basis to cash basis for tax purposes. The adjustments involved the timing of the reporting of business income.

In 1989 and 1990, petitioners paid interest on the Federal income tax deficiencies for the 1982, 1984, and 1985 years.

On Schedule C of their 1989 and 1990 Federal income tax returns, petitioners claimed an allocable portion of such interest as a business expense.

Respondent disallowed a business deduction for the interest but did allow 20 percent of the interest paid in 1989 and 10 percent of the interest paid in 1990 as a deduction under the phase-in provisions of section 163(h)(5).[1]

Petitioners assert that the amount of the interest expense which they have calculated as being attributable to Carrier Communications is an ordinary and necessary expense of a trade or business under section 162, deductible in computing adjusted gross income under section 62(a), and is therefore not personal interest under section 163(h).

Respondent argues that petitioners are not entitled to a deduction because, under section 1.163-9T(b)(2)(I)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), interest on a Federal individual income tax deficiency is nondeductible personal interest under section 163(h).

Petitioners reply that section 1.163-9T(b)(2)(I)(A),

---

 Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Temporary Income Tax Regs., is invalid insofar as it disallows a deduction for interest on a deficiency that is an ordinary and necessary expense of a trade or business.

Section 62(a) provides in part:

(a)  General Rule.--For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

(1)  Trade and business deductions.--The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

Section 162(a) provides in part:

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

Section 163(h) provides in part:

(h) Disallowance of Deduction for Personal Interest.--

(1) In General.--In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.

(2) Personal Interest.-- For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than--

(A) interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),

Before proceeding to a determination of the effect of pertinent regulations, we must first consider whether the interest expense involved herein is sufficiently connected to the

business of Carrier Communications so as to satisfy the "properly allocable to a trade or business" exception of section 163(h)(2)(A), without regard to the regulations.

Initially, we note that respondent does not question petitioners' calculation of the amounts of the total interest payments that are allocable to those portions of the income tax deficiencies based on adjustments to the income from Carrier Communications. Moreover, respondent has stipulated that those adjustments reflected the correction of errors made in converting the revenue of Carrier Communications giving rise to such income from the accrual to the cash basis, i.e., the timing of reporting such income. In this context, petitioners have satisfied some of the conditions that have thus far enabled us to avoid a decision as to the impact of section 163(h)(2)(A) and the temporary regulation thereunder. Tippin v. Commissioner, 104 T.C. 518, 529 (1995) (taxpayer failed to show any relationship between the interest expense and any business); Crouch v. Commissioner, T.C. Memo. 1995-289 (record failed to support taxpayer's allocation); Rose v. Commissioner, T.C. Memo. 1995-75 (investment interest).[2] The question remains, however, whether the elements giving rise

---

In Tippin v. Commissioner, 104 T.C. 518, 529 n.9 (1995), we specifically stated that we were not deciding the issue, a view we also articulated in Rose v. Commissioner, T.C. Memo. 1995-75. The issue was apparently also involved but not reached in True v. United States, 93-2 USTC par. 50,461, 72 AFTR2d 93-5660 (D. Wyo. 1993), affd. per curiam without published opinion 35 F.3d 574 (10th Cir. 1994), because the District Court, in holding for the Government, ruled that the interest on Federal income tax deficiencies was attributable to the business of partnerships or subchapter S corporations of which the taxpayers were partners or shareholders and not to their businesses as individuals.

to the deficiencies to which the interest herein relates are of such a nature as to permit such interest to constitute a business expense within the meaning of section 162(a), and therefore of section 62(a), and, as a result, to be characterized as interest "on indebtedness properly allocable to a trade or business" within the meaning of section 163(h)(2)(A)[3] in the event that the temporary regulation is not applicable. We think a review of the cases decided prior to the enactment of section 163(h)(2)(A), in respect of the deductibility of interest on income tax deficiencies as a business expense, will throw light on this question and is therefore a significant element in our analysis of the impact of that section on petitioners' claimed interest deduction. It is to that review that we first turn our attention.

In Standing v. Commissioner, 28 T.C. 789 (1957), affd. 259

---

Sec. 163(h)(2)(A) was amended by sec. 1005(c)(4) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3390.

Sec. 163(h)(2)(A), as originally enacted in 1986, provided:

    (A) interest paid or accrued on indebtedness
    incurred or continued in connection with the conduct of
    a trade or business (other than the trade or business
    of performing services as an employee), [Tax Reform Act
    of 1986, Pub. L. 99-514, sec. 511(b), 100 Stat. 2085,
    2246.]

The amended language, effective for the years in issue, was intended to conform the definition of personal interest to the language of the related passive loss and investment interest limitation provisions, to permit consistent application of a standard for allocation of interest. See S. Rept. 100-445, at 36 (1988); H. Rept. 100-795, at 35 (1988). There is no indication that the change in language was intended to make any substantive change in the meaning of the statutory language.

F.2d 450 (4th Cir. 1958), we faced the question of whether interest on a deficiency in Federal income tax resulting in part from improper reporting of income from a sole proprietorship on the cash basis instead of the accrual basis, along with related attorney's and accountant's fees, was deductible as a business expense. The taxpayers took a deduction under section 22(n)(1) of the Internal Revenue Code of 1939, the predecessor of section 62(a), in order to arrive at adjusted gross income. While our analysis was focused on the deductibility of attorney's fees, we held that the deficiency was based on adjustments "attributable to the business of the sole proprietorship" and allowed the deduction for deficiency interest as an ordinary and necessary business expense. Our reasoning was adopted by the Court of Appeals.

In Polk v. Commissioner, 31 T.C. 412 (1958), affd. 276 F.2d 601 (10th Cir. 1960), we had to decide whether interest on a deficiency, arising out of inventory valuation corrections, was a deductible business expense for purposes of calculating a net operating loss carryover. Finding that the deficiency arose in connection with the taxpayer's business, the Court determined that the case was controlled by Standing v. Commissioner, supra, and held that the interest was deductible as an ordinary and necessary business expense and was to be taken into account in determining the net operating loss carryover. Again, our reasoning was adopted by the Court of Appeals.

In Reise v. Commissioner, 35 T.C. 571 (1961), affd. 299 F.2d

380 (7th Cir. 1962), we again had to decide whether certain expenses, including interest on a Federal income tax deficiency, stemming from the reporting of sales on a cash basis instead of an accrual basis, were deductible as business expenses in computing a net operating loss carryback. Recognizing that prior to Standing v. Commissioner, supra, and Polk v. Commissioner, supra, we had denied taxpayers a deduction for deficiency interest in Aaron v. Commissioner, 22 T.C. 1370 (1954), we concluded that, in Standing and Polk, we had departed from the restrictive view of the phrase "attributable to trade or business carried on by the taxpayer" utilized in Aaron[4] and that Aaron should no longer be followed where net operating losses were concerned. Reise v. Commissioner, supra at 579. We reaffirmed the reasoning of Standing and Polk and, finding the factual situation indistinguishable from those cases, held the deficiency interest deductible as a business expense in determining the amount of a net operating loss carryover. Again, our reasoning was adopted by the Court of Appeals.

To complete our analysis of the pre-section 163(h) situation, we note that because of explicit legislative history

The standard adopted by Aaron v. Commissioner, 22 T.C. 1370 (1954), imported the statement in the legislative history of sec. 22(n)(1) of the Internal Revenue Code of 1939 (the predecessor of sec. 62(a)(1)) to the effect that expenses deductible under that section were those "directly incurred in the carrying on of a trade or business" and that "the connection contemplated by the statute is a direct one rather than a remote one", giving State income taxes as an example of a nondeductible expense. Reise v. Commissioner, 35 T.C. 571, 577 (1961), affd. 299 F.2d 380 (7th Cir. 1962).

the deduction of State income taxes on business income, in computing adjusted gross income under predecessors of section 62(a)(1), has been denied, in contrast to its allowance where net operating losses were involved and the allowance of a deduction for interest on Federal income tax deficiencies under predecessors of section 62(a)(1). Tanner v. Commissioner, 45 T.C. 145 (1965), affd. per curiam 363 F.2d 36 (4th Cir. 1966).[5] This treatment has been accepted by respondent insofar as the net operating loss provisions are concerned but not with respect to interest on deficiencies as a business expense under sections 162 and 62. See Rev. Rul. 70-40, 1970-1 C.B. 50.

Respondent argues that Polk v. Commissioner, supra, compels the conclusion that, as a general rule, deficiency interest is not a business expense, and that the cases recognizing a deduction are unfounded and wrong. Respondent's argument rests on the following statement of the Court of Appeals for the Tenth Circuit:

> Unless it can be said that the failure to properly
> evaluate inventories, which form a part of a taxpayer's
> return, arises because of the nature of the business,
> and is ordinarily and necessarily to be expected,
> interest on a deficiency assessment does not arise out
> of the ordinary operation of the business and may not
> be deducted. [Polk v. Commissioner, 276 F.2d at 603;
> fn. ref. omitted.]

This statement is rooted in the requirement that deficiency

In Maxcy v. Commissioner, 26 T.C. 526 (1956), and Estate of Broadhead v. Commissioner, T.C. Memo. 1966-26, affd. 391 F.2d 841 (5th Cir. 1968), we sustained the disallowance of the deduction for State income taxes on the ground of failure of proof as to the requisite business connection.

interest must be attributable to a trade or business to be deductible, which we found to be the case in <u>Polk v. Commissioner</u>, <u>supra</u>. Clearly, this statement does not support a per se denial of the deduction of deficiency interest in view of the fact that the Court of Appeals affirmed our decision that such interest was an ordinary and necessary expense for net operating loss purposes. It may be that the above-quoted language narrows the types of situations where the ordinary and necessary business expense requirement of section 162 has been satisfied. Indeed, we are satisfied that, given the source of the income tax adjustments herein, i.e., accounting errors in applying cash and accrual methods, petitioners have satisfied any such narrow standard. <u>Reise v. Commissioner</u>, <u>supra</u> (cash versus accrual changes); cf. <u>Polk v. Commissioner</u>, <u>supra</u> (involving inventory valuations). We reject respondent's attack to the extent that it goes beyond the above quotation from <u>Polk</u> and is directed against the pre-section 163(h) decided cases generally.

Concededly there is some confusion in the reasoning of the decided cases, but the thrust of their bottomline conclusions is clear. Exceptions will be accorded to the ordinary and necessary provision of section 162 only when there is explicit legislative indication that such a result was intended. Thus, we agree with petitioners that there is a consistent body of pre-section 163(h) case law holding that, at least under limited circumstances such as were involved in <u>Standing v. Commissioner</u>, <u>supra</u>, <u>Polk v. Commissioner</u>, <u>supra</u>, and <u>Reise v. Commissioner</u>, <u>supra</u>, deficiency

interest is a deductible business expense under section 162 and therefore under section 62(a)(1). See Brennan & Megaard, "Deducting Interest on Noncorporate Trade or Business Tax Deficiencies: Uncertainty Exists Under the New Temporary Regulations," 13 Rev. of Taxation of Individuals 22 (1989).

With the foregoing as background, we address the critical issue before us, namely, the effect of section 163(h)(2)(A) and section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987), and section 1.163-9T(b)(2)(I)(A), Temporary Income Tax Regs., which specifically denies the deduction herein claimed. This case is one of first impression in this Court on this issue. See supra pp. 5-6. We note, however, that the Court of Appeals for the Eighth Circuit in Miller v. United States, 65 F.3d 687 (1995), although agreeing without conclusion as to the pre-section 163(h) state of the law, has accepted respondent's position and held the temporary regulation a reasonable interpretation of the statute and therefore valid.[6]

---

The judicial history of Miller v. United States, 65 F.3d 687 (8th Cir. 1995), affg. 95-1 USTC par. 50,068, 76 AFTR2d 95-5162 (D.N.D. 1994), revg. 841 F. Supp. 305 (D.N.D. 1993), shows that the District Court initially entered an order, on cross motions for summary judgment, holding that sec. 1.163-9T(b)(2)(I)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), was invalid. Miller v. United States, 841 F. Supp. 305 (D.N.D. 1993). After further discovery, the District Court entered a decision for the Government on the ground that the deficiency interest could not be found to constitute an ordinary and necessary business expense. Miller v. United States, 95-1 USTC par. 50,068, 76 AFTR2d 95-5162 (D.N.D. 1994). The court found the taxpayer "chose to operate what is an obviously improper income deferral scheme in order to defer the reporting of substantial amounts of money as taxable income." Id. 95-1 USTC at 87,232, 76 AFTR2d at 95-5166. The Court of Appeals for the

(continued...)

Initially, we note that temporary regulations are accorded the same weight as final regulations. <u>Peterson Marital Trust v. Commissioner</u>, 102 T.C. 790, 797 (1994). The regulations involved herein were promulgated pursuant to the general authority granted to the Secretary of the Treasury by section 7805(a) and not pursuant to specific legislative authority, T.D. 8168, 1988-1 C.B. 80, 83; they are therefore interpretative. An interpretative regulation is owed "'less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision.'" <u>United States v. Vogel Fertilizer Co.</u>, 455 U.S. 16, 24 (1982) (quoting <u>Rowan Cos. v. United States</u>, 452 U.S. 247, 253 (1981)). An interpretative regulation will be upheld if it is found to "'implement the congressional mandate in some reasonable manner'". <u>United States v. Vogel Fertilizer Co.</u>, 455 U.S. at 24 (quoting <u>United States v. Correl.</u>, 389 U.S. 299, 307 (1967)).

Recently, the Supreme Court summarized the standard of review as follows:

> Under the formulation now familiar, when we confront an expert administrator's statutory exposition, we inquire first whether "the intent of Congress is clear" as to "the precise question at issue." <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842 (1984). If so, "that is the end of the matter."

---

(...continued)
Eighth Circuit then held that, contrary to the conclusion of the District Court, the regulation was valid, and as such, dispositive of the taxpayers' claimed interest deduction. <u>Miller v. United States</u>, 65 F.3d 687 (8th Cir. 1995). Because the District Court's ultimate conclusion was that the interest at issue was nondeductible personal interest, the Court of Appeals affirmed.

Ibid.  But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Id., at 843. If the administrator's reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the administrator's judgment "controlling weight."  Id., at 844. [NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. ___, ___, 115 S.Ct. 810, 813-814 (1995); citations omitted.]

Section 163(h)(2)(A) was added to the Internal Revenue Code by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 511(b), 100 Stat. 2085, 2246.  The key phrase that governs the disposition of this case involves the exception from personal interest of "interest paid or accrued on indebtedness properly allocable to a trade or business".  We have previously noted that the original version of this provision was different but that the language change was not intended to make any substantive change.  See supra note 3.  Arguably, this language in and of itself is sufficient to enable petitioners to prevail, since such interest on Federal income tax deficiencies was considered, at least in situations such as that involved herein, as an ordinary and necessary business expense under predecessors of section 162 and therefore of section 62(a)(1) by the pre-section 163(h) cases, a view also adopted with respect to net operating loss carryovers and carrybacks.  Reise v. Commissioner, supra; Polk v. Commissioner, supra; Standing v. Commissioner, supra.  We note, however, that, in a comparable situation dealing with the deduction of State income taxes in computing adjusted gross income, we found sufficient ambiguity to cause us to look at the

legislative history and approve a regulation denying such a deduction.  See <u>Tanner v. Commissioner</u>, 45 T.C. at 148-149, 151.

Against the foregoing background, we consider the regulatory framework and legislative history that relate to the deductibility of interest on income tax deficiencies.  Section 1.163-9T(b)(1)(I), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), specifically references section 1.163-8T, Temporary Income Tax Regs., by providing that interest is not personal interest if it is "paid or accrued on indebtedness properly allocable (within the meaning of § 1.163-8T) to the conduct of a trade or business".  Additionally, paragraph (b)(3) of section 1.163-9T, Temporary Income Tax Regs., 52 Fed. Reg. 48410, further references section 1.163-8T, Temporary Income Tax Regs., "for rules for determining the allocation of interest expense to various activities".  Such being the case, we deal first with the impact of section 1.163-8T, Temporary Income Tax Regs., noting that respondent makes only a passing reference to the regulation without advancing any argument as to its application to this case, and that petitioners completely ignore it.

Section 1.163-8T, Temporary Income Tax Regs., establishes an allocation method based on the expenditure, i.e., the use, of the debt proceeds.  It provides in paragraph (c)(1):

> (c)  Allocation of debt and interest expense--(1) Allocation in accordance with use of proceeds.  Debt is allocated to expenditures in accordance with the use of the debt proceeds and, * * *.  * * * debt proceeds and related interest expense are allocated solely by reference to the use of such proceeds, and the

> allocation is not affected by the use of an interest in any property to secure the repayment of such debt or interest.  * * *  [52 Fed. Reg. 25000 (July 2, 1987).]

On this basis, it can be argued that the proceeds of an individual's income tax indebtedness cannot be considered as expended in a trade or business.  From this it would follow that section 1.163-9T(b)(2)(I)(A), Temporary Income Tax Regs., which treats interest on income tax deficiencies as personal interest (see infra p. 19), simply represents a specific example of the application of the expenditure method of allocation of indebtedness set forth in section 1.163-8T, Temporary Income Tax Regs., and is therefore valid.

The question to be resolved is whether section 7805(a) provides a sufficient basis to justify the application of the expenditure method of allocation set forth in section 1.163-8T(c), Temporary Income Tax Regs., to the factual situation involved herein.  Whatever the merits of such method of allocation may be in other contexts, we do not think that the Secretary of the Treasury should be entitled to use the authority conferred by section 7805(a) to construct a formula which excludes an entire category of interest expense in disregard of a business connection such as exists herein.  Such a result discriminates against the individual who operates his or her business as a proprietorship instead of in corporate form where the limitations on the deduction of "personal interest" would not apply.  See Brennan & Megaard, supra at 33.  We are not persuaded that we should view the category of income tax deficiencies as

simply an incidental example, which unfortunately falls within the broad spectrum of indebtedness to which the application of the expenditure method of allocation would be appropriately applied, a situation which, in and of itself, might not be sufficient to invalidate the regulation. See Associated Telephone & Telegraph Co. v. United States, 306 F.2d 824, 833 (2d Cir. 1962); Brunswick Corp. v. Commissioner, 100 T.C. 6, 16 (1993).

Nor do we think that the reasonableness of the expenditure method of allocation, as applied to the facts herein, can be supported by the fact that the Secretary chose the expenditure method after considering a pro rata apportionment method of allocation that might have produced a different result in respect of interest on business-related income tax deficiencies but which the Secretary viewed as involving "practical and theoretical problems", at the same time conceding that such problems would not necessarily preclude the adoption of a pro rata apportionment method in the future. T.D. 8145, 1987-2 C.B. 47, 50. The fact of the matter is that any method of allocation would present similar problems in its application (sections 1.163-8T and 1.163-9T, Temporary Income Tax Regs., are themselves stark testimony as to the validity of this observation), but this factor should not, in and of itself, justify the selection of a method, at least to the extent that its application produces an unreasonable result.

Moreover, we are not convinced that the reach of section 1.163-8T, Temporary Income Tax Regs., necessarily provides a

sufficient basis for validating, under all circumstances, the specific provision of section 1.163-9T, Temporary Income Tax Regs. Thus, section 1.163-8T(b)(5), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987), defines personal expenditure to mean "an expenditure that is not a business expenditure" and section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., 52 Fed. Reg. 25001 (July 2, 1987), provides:

> (ii) Debt assumptions not involving cash disbursements. If a taxpayer incurs or assumes a debt in consideration for the sale or use of property, for services, or for any other purpose, or takes property subject to a debt, and no debt proceeds are disbursed to the taxpayer, the debt is treated for purposes of this section as if the taxpayer used an amount of the debt proceeds equal to the balance of the debt outstanding at such time to make an expenditure for such property, services, or other purpose.

Under this provision, it would appear permissible to analyze the elements of the income tax indebtedness to determine whether its imputed expenditure is properly allocable to business activity. Indeed, such an interpretation would be consistent with the overall legislative purpose in enacting section 163(h), namely to end the deduction for interest incurred to fund consumption expenditures. S. Rept. 99-313 at 804 (1985), 1986-3 C.B. (Vol. 3) 804; H. Conf. Rept. 99-841 at II-154 (1986), 1986-3 C.B. (Vol. 4) 154. To conclude that an income tax deficiency is ipso facto a consumption expenditure begs the issue. Thus, aside from our conclusion that the regulatory provisions contained in section 1.163-8T, Temporary Income Tax Regs., are unreasonable as applied to the facts herein, it is possible to conclude that the provisions are sufficiently elliptical so that the validity of

section 1.163-9T, Temporary Income Tax Regs., can, in any event, be appropriately independently determined.  Accordingly, we turn our attention to that task.

Section 1.163-9T(b)(2)(I)(A), Temporary Income Tax Regs., provides:

> (2) Interest relating to taxes--(I) In general. Except as provided in paragraph (b)(2)(iii) of this section, personal interest includes interest--
>
> (A) Paid on underpayment of individual Federal, State or local income taxes * * * regardless of the source of the income generating the tax liability;

The only legislative history of section 163(h) which directly addresses the issue involved herein is the conference committee report which states:

> Under the conference agreement, personal interest is not deductible.  Personal interest is any interest, other than interest incurred or continued in connection with the conduct of a trade or business (other than the trade or business of performing services as a[n] employee), investment interest, or interest taken into account in computing the taxpayer's income or loss from passive activities for the year.  Personal interest also generally includes interest on tax deficiencies. [H. Conf. Rept. 99-841 at II-154 (1986), 1986-3 C.B. (Vol. 4) 1, 154.]

The General Explanation of the Tax Reform Act of 1986, elaborates on this statement by providing as follows:

> Personal interest also includes interest on underpayment of individual Federal, State or local income taxes notwithstanding that all or a portion of the income may have arisen in a trade or business, because such taxes are not considered derived from the conduct of a trade or business.[60]  * * *

---

[60]  Personal interest does not include interest on taxes, other than income taxes, that are incurred in connection with a trade or business.  (For the rule that taxes on net income are not attributable to a

> trade or business, see Treas. Reg. sec. 1.62-1(d), relating to nondeductibility of State income taxes in computing adjusted gross income.) * * * [Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 266 (J. Comm. Print 1987).]

Were it not for the foregoing, we would have been inclined to conclude that the provisions of section 163(h)(2)(A) standing alone would not have provided a sufficient basis for upholding the regulation. We so state because we have consistently been reluctant to conclude that Congress overruled existing case law when the statutory language does not compel such a conclusion and Congress has not otherwise expressly indicated that such a result should ensue. See Santa Anita Consolidated, Inc. v. Commissioner, 50 T.C. 536, 560 n.13 (1968); cf. Stephenson Trust v. Commissioner, 81 T.C. 283, 298-299 (1983); see also Reise v. Commissioner, 35 T.C. at 578. Compare Marquis v. Commissioner, 49 T.C. 695, 699 (1968), discussing the situation where, after Congress imposed a specific limitation on the amount of deductible charitable contributions, Congress made clear, by statutory provision, that such limitation applied as well to the nondeductibility of charitable contributions as ordinary and necessary business expenses under section 23(a)(2) of the Internal Revenue Code of 1939. Our reluctance is reinforced by the fact that the conference committee report makes it clear, at the outset, that personal interest does not include "interest incurred or continued in connection with a trade or business". H. Conf. Rept. 99-841, supra at II-154, 1986-3 C.B. (Vol. 4) at 154; see also S. Rept. 99-313 at 804-806 (1986), 1986-3 C.B.

(Vol. 3) 1, 804-806.  This provides a broad context in which to evaluate the impact of the exception for interest on an indebtedness allocable to the business.   Id.

We first address the language of the conference committee report.  Respondent argues that the word "generally" was intended only to permit deduction of interest on past-due business taxes, such as sales and excise taxes which the regulations specifically exclude from the definition of personal interest.  See sec. 1.163-9T(b)(2)(iii)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987).  On this basis, respondent concludes that section 1.163-9T(b)(2)(I)(A), Temporary Income Tax Regs., is reasonable and that additional proof of reasonableness is provided by the statement in the Joint Committee Staff Explanation.  See supra p. 19.  This approach is also articulated by the Court of Appeals for the Eighth Circuit in Miller v. United States, 65 F.3d 687 (8th Cir. 1995), holding the temporary regulation valid.

We think both respondent and the Court of Appeals for the Eighth Circuit overlook the use of the word "deficiencies" in the sentence in the conference committee report.  That word has had a long-established and well-known meaning.  It has been described as a "term of art".  Bregin v. Commissioner, 74 T.C. 1097, 1101-1102 (1980), which describes "deficiency" as a term of art represented by statutory definition as "the amount by which the income, gift, or estate tax due under the law exceeds the amount of such tax shown on the return"; see also Estate of Mueller v.

Commissioner, 101 T.C. 551, 568 (1993) (Chabot, J., dissenting). Moreover, in cases too numerous to cite, the word "deficiency" has been treated as embodying such a definition and has consequently acquired a fixed and settled meaning. Such being the case, we have every reason to assume that the conference committee used the word in that sense. See United States v. Merriam, 263 U.S. 179, 187 (1923); Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 37 (1995), supplemented by 104 T.C. 417 (1995); cf. St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 541 (1978) ("Congress thus employed terminology that evokes a tradition of meaning").

In short, we think that when the conference committee used the phrase "tax deficiencies", it was referring to amounts due by way of income, estate, and gift taxes. In this context, the word "generally" in the conference committee report takes on a significant meaning. It signals that not all interest relating to income tax, etc., deficiencies are included in "personal interest". The logical explanation for what is excluded by "generally" is such interest that constitutes an ordinary and necessary business expense and is therefore "allocable to an indebtedness of a trade or business" within the meaning of the exception clause of section 163(h)(2)(A). To adopt respondent's position would require us to substitute the word "always" for "generally" and to expand the interpretation of the word "deficiencies" beyond its accepted meaning to encompass taxes other than income, etc., taxes in order to account for the use of

the word "generally".  By way of contrast, our interpretation accepts the established meaning of "deficiencies" and gives effect to "generally" without modification.  Nor do we think our view is negated by the rationale advanced by both respondent and the Court of Appeals for the Eighth Circuit that, in the case of an individual, income tax, etc., the payment of deficiencies and therefore of the interest thereon is always a "personal obligation".  That is equally true of the obligation to pay interest on sales and excise taxes imposed upon a business conducted as a sole proprietorship--interest that is excluded by regulation.  Sec. 1.163-9T(b)(2)(iii)(A), Temporary Income Tax Regs.

Nor can respondent's position be salvaged by the Joint Committee Staff Explanation.  Such a document is not part of the legislative history although it is entitled to respect.  E.g., Condor International, Inc. v. Commissioner, 98 T.C. 203, 227 (1992); see also Estate of Hutchinson v. Commissioner, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. T.C. Memo. 1984-55; Livingston, "What's Blue and White and Not Quite as Good as a Committee Report: General Explanations and the Role of 'Subsequent' Tax Legislative History," 11 Amer. J. Tax Policy 91 (1994).  Where there is no corroboration in the actual legislative history, we shall not hesitate to disregard the General Explanation as far as congressional intent is concerned.[7]

In this connection, we also note that the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, was enacted on Oct. 22,
(continued...)

See Estate of Wallace v. Commissioner, 965 F.2d 1038, 1050-1051 n.15 (11th Cir. 1992), affg. 95 T.C. 525 (1990); Zinniel v. Commissioner, 89 T.C. 357, 367 (1987), affd. 883 F.2d 1350 (7th Cir. 1989);[8] see also Livingston, supra at 93 ("The Blue Book is on especially weak ground when it adopts anti-taxpayer positions not taken in the committee reports."). Given the clear thrust of the conference committee report, the General Explanation is without foundation and must fall by the wayside. To conclude otherwise would elevate it to a status and accord it a deference to which it is simply not entitled.

Respondent further argues that Congress has failed to express dissatisfaction with the regulation in subsequent legislative actions in 1988 and 1990. According to National Muffler Dealers Association v. United States, 440 U.S. 472, 477 (1979), this is one element to consider in determining the reasonableness of a regulation. However, we do not believe the legislative action discussed by respondent is the type contemplated by the Supreme Court. The first action is the enactment of the amendment to section 163(h)(2)(A) on November 10, 1988, which was less than a year after the issuance of the regulation on December 22, 1987, and which, as we have

---

(...continued)
1986, during the 99th Congress, whereas the General Explanation was published on May 4, 1987, during the 100th Congress. Thus, the General Explanation is not even entitled to the respect it might otherwise be accorded if it had been prepared for the Congress which enacted sec. 163(h).

See also Lawson v. Commissioner, T.C. Memo. 1994-286, at n.8.

previously pointed out, see supra note 3, made no substantive change.  Besides the implication from the fact that the regulation was only temporary, 11 months is a relatively short period of time for considering its impact.

The second action is a 1990 proposal of the Senate Finance Committee to amend section 163, by eliminating the deduction for corporate taxpayers of interest on income tax deficiencies.  In explaining the proposed change of law, the Committee states:

> Individuals are not permitted to deduct personal interest. For this purpose, personal interest includes interest on underpayment of the individual's income taxes, even if all or a portion of the individual's income is attributable to a trade or business.  [136 Cong. Rec. S15711 (Oct. 18, 1990).]

First, this statement is not reliable evidence of Congressional approval considering that it is only a proposal entered into the Senate record, and that the provision was not approved by Congress, nor is there any indication that the House of Representatives even reviewed the proposal. Furthermore, the proposed amendment contains an express restriction on the deductibility of deficiency interest, which shows that Congress knew how to restrict the deductibility of interest if it so intended.

One final comment.  Suppose that the only income reported on the return of petitioners had been Schedule C income from Carrier Communications and that the entire deficiency related to the type of errors that the courts have previously concluded were expected to occur in the ordinary course of business.  E.g., Polk v. Commissioner, supra.  It would constitute an unrealistic

application of our tax laws to conclude that the interest on such deficiency is not attributable to an indebtedness properly allocable to a trade or business under section 163(h)(2)(A), in the absence of clear legislative intent that such a result is required. Yet, such is the inescapable consequence of adopting respondent's position.

In light of the foregoing, and with all due respect to the Court of Appeals for the Eighth Circuit, we hold that, as applied to the circumstances involved herein, section 1.163-9T(b)(2)(I)(A), Temporary Income Tax Regs., constitutes an impermissible reading of the statute and is therefore unreasonable. Accordingly, we further hold that the interest involved herein is interest "on indebtedness properly allocable to a trade or business" and therefore excluded from personal interest under section 163(h)(2). In so holding, we emphasize that there will be situations where a Federal income tax deficiency will not be as narrowly focused as is the case herein and therefore interest paid on the deficiency may not be said to constitute an ordinary and necessary business expense allocable within the meaning of section 163(h)(2)(A). Indeed, the situation in Miller v. United States, 95-1 USTC par 50,068, 76 AFTR2d 95-5162 (D.N.D. 1994), affd. 65 F.3d 687 (8th Cir. 1995), which the District Court described as "an obviously improper income deferral scheme", see supra note 6, can be said to fall within the latter category.

In order to take into account mathematical corrections encompassed by the stipulation of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

Reviewed by the Court.

SWIFT, JACOBS, WRIGHT, PARR, WELLS, CHIECHI, and VASQUEZ, <u>JJ</u>., agree with this majority opinion.

FOLEY, <u>J</u>., concurs in the result only.

SWIFT, J., concurring:  Two significant facts are clear and undisputed in this case:  (1) Under the express language of section 163(h)(2)(A), if an interest expense is properly allocable to a trade or business, then under that statute the interest expense is deductible; and (2) the interest expense at issue herein arose from, in connection with, and is allocable to, petitioners' business.  Accordingly, the interest expense should be deductible.

Under respondent's regulation and position herein, petitioners' interest expense is not deductible "**regardless**" of the fact that it was clearly incurred by petitioners in connection with, and that it is undisputably allocable to, petitioners' business.  Respectfully, respondent's regulation and position herein should be rejected as an erroneous attempt to redefine the substantive provision of section 163(h)(2)(A).

I reiterate and emphasize that the statute speaks for itself.  Thereunder, at the least, if an interest expense clearly relates to and is allocable to a taxpayer's business, it is deductible.  Respondent's regulation may provide reasonable methods for allocating interest between a taxpayer's business and personal activities.  But if there is no question as to what an item of interest expense relates to, and is allocable to, then the statute is clear and, if the expense relates to the taxpayers' business, the statute allows the deduction.  Because section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), in the context of a sole

proprietorship, provides that **regardless** of that fact, an interest expense is not deductible, respondent's regulation should be considered invalid.

The statute mandates an allocation and allows a deduction for interest expense related to a taxpayer's business. Respondent's regulation, in the situation of a sole proprietor, would leave nothing to be allocated.

Further, respondent's position herein and her regulation under section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), is inconsistent with the specific allocation rule provided under section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., 52 Fed. Reg. 25001 (July 2, 1987), with regard to the frequent situations where no loan proceeds are involved in the underlying transaction or activity (namely, where the seller or provider of goods or services provides the financing to the taxpayer or where the transaction involves interest expenses associated with the mere extension of credit, not the provision of funds). Section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., provides as follows:

> If a taxpayer incurs or assumes a debt in consideration for the sale or use of property, for services, or for any other purpose, or takes property subject to a debt, and no debt proceeds are disbursed to the taxpayer, the debt is treated for purposes of this section as if the taxpayer used an amount of the debt proceeds equal to the balance of the debt outstanding at such time to make an expenditure for such property, services, or other purpose. [Emphasis added.]

The above regulation simply provides that in the many situations where financing or credit transactions do not involve the disbursement of any loan proceeds but do involve the extension of credit and interest charges or expenses therefor, the interest expenses are to be allocated between the taxpayer's business and personal activity based on the nature of the particular underlying activity giving rise to the extension of credit.

Under section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., even though no loan proceeds were disbursed to petitioners by the Government, credit was extended to petitioners by the Government, and petitioners were charged interest with regard thereto.

Because the underlying activity in question in this case (giving rise to the tax deficiency and to the Government's extension of credit to petitioners) undisputedly relates to petitioners' business, under section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., the interest expense in question should be treated as allocable to petitioners' business and as deductible under the statute.

COLVIN and LARO, JJ., agree with this concurring opinion.

LARO, J., concurring:  I agree with the majority opinion. I write separately, however, to emphasize the invalidity of section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), for reasons additional to those stated by the majority.

Before the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2085, this and other courts allowed an individual to deduct interest on his or her income tax liability as a business expense under sections 62(a)(1) and 162(a), see, e.g., Standing v. Commissioner, 28 T.C. 789, 795 (1957), affd. 259 F.2d 450 (4th Cir. 1958), or a nonbusiness itemized deduction, sec. 163(a).[1]  Thus, the courts allowed an individual to compute adjusted gross income (AGI) under section 62(a)(1) by deducting deficiency interest that was an ordinary and necessary expense under section 162(a), irrespective of the provisions of section 163 and independent of whether the individual itemized his or her deductions.  See generally Bittker & Lokken, Federal Taxation Of Income, Estates And Gifts, par. 31.1.1, at 31-2 (2d ed. 1990) ("Since, even in the absence of §163(a), interest attributable to business or profit-oriented transactions would be deductable under §162 * * * or §212 * * *, the principal function of §163(a) is to permit the deduction of interest on consumer debt").  The Courts also allowed an individual to deduct deficiency interest that was an ordinary and necessary business expense under section 162(a) in order to compute a net operating loss (NOL) under section 172(d)(4).  Polk v. Commissioner, 31 T.C. 412, 415 (1958), affd. 276 F.2d 601 (10th Cir. 1960).

The Commissioner disagrees with the Courts' view.  According to her, interest on an income tax liability attributable to a

---

[1] Whether the interest was deductible as a business expense or a nonbusiness itemized deduction depended on the character of the income tax liability.

business is not deductible by an individual in computing AGI. In Rev. Rul. 58-142, 1958-1 C.B. 147, the Commissioner stated that an individual's payment of State income taxes, interest on State and Federal income taxes, and litigation expenses related to these taxes was "not attributable to a trade or business", even if these expenses were related to business income or deductible under section 212. The Commissioner ruled that these State income taxes, interest on State and Federal income taxes, and litigation expenses were not deductible from gross income in computing AGI under former section 62(a)(1). The Commissioner also ruled that these State income taxes, interest on State and Federal income taxes, and litigation expenses did not generate an NOL under section 172(d)(4).

The Commissioner's ruling in Rev. Rul. 58-142, supra, with respect to AGI, was based on former section 1.62-1(d), Proposed Income Tax Regs., 21 Fed. Reg. 8403 (Nov. 2, 1956), which provides:

> To be deductible for the purposes of determining adjusted gross income, expenses must be those directly, and not those merely remotely, connected with the conduct of a trade or business. For example, taxes are deductible in arriving at adjusted gross income only if they constitute expenditures directly attributable to a trade or business or to property from which rents or royalties are derived. Thus, property taxes paid or incurred on real property used in a trade or business are deductible, but State taxes on net income are not deductible even though the taxpayer's income is derived from the conduct of a trade or business.

The Commissioner's ruling with respect to the NOL was primarily based on this Court's decisions in Maxcy v. Commissioner, 26 T.C. 526 (1956), and Aaron v. Commissioner, 22 T.C. 1370 (1954). In

Maxcy v. Commissioner, supra at 527, the Court held that the taxpayer failed to prove that he could compute an NOL by deducting from his gross income a claimed business expense of interest on underpayments of personal income tax.  In Aaron v. Commissioner, supra at 1376, the Court sustained the Commissioner's determination that the taxpayer could not compute an NOL by deducting the State income taxes that he claimed were related to his business income.  According to the Court, the phrase "attributable to" meant that an expense had to bear a "direct relation" to the individual's business.  Id.

In Rev. Rul. 70-40, 1970-1 C.B. 50, the Commissioner reconsidered and reversed her position in Rev. Rul. 58-142, supra, insofar as it held that State income taxes, deficiency interest, and litigation expenses related to a taxpayer's business income were nondeductible nonbusiness expenses for purposes of determining an NOL.[2]  Prior to her reconsideration, this and other Courts had consistently rejected that position.  First, in Standing v. Commissioner, supra at 795, this Court held that the taxpayer's deficiency interest and professional fees were deductible as business expenses under sections 22(n)(1) and

_____

[2] At the same time, the Commissioner reaffirmed her view that these expenses were not deductible in computing AGI.  The Commissioner explained her inconsistency in these two views by noting that the legislative history of sec. 172(d)(4) contained no language comparable to the language in the legislative history of former sec. 62(a)(1) which stated that expenses deductible in arriving at AGI must be "directly incurred" in carrying on a trade or business, and that State income taxes are not directly incurred.  Rev. Rul. 70-40, 1970-1 C.B. 50, 50-51.

23(a)(1)(A) of the 1939 Code, in arriving at AGI.[3]  In Standing, the taxpayer was the sole proprietor of two businesses.  The Commissioner audited the taxpayer's 1945 through 1949 individual income tax returns, and the taxpayer retained an attorney and an accountant to assist him in the audit.  The taxpayer and the Commissioner settled the matter; substantially all of the agreed-upon deficiencies were proximately related to the taxpayer's businesses.  The taxpayer later claimed a business deduction for the deficiency interest and the professional fees incurred with respect to the deficiencies.  The Commissioner disallowed these expenses as business deductions from gross income mainly because the expenses had no connection with the taxpayer's business.  We disagreed.  We held that the interest and the fees were "ordinary and necessary expenses paid or incurred during the taxable year in carrying on * * * [the taxpayer's] trade or business" within the meaning of section 23(a)(1)(A) of the 1939 Code.  Standing v. Commissioner, supra at 793.  The Court of Appeals for the Fourth Circuit affirmed our decision allowing these deductions.  Commissioner v. Standing, 259 F.2d at 456.

_____

[3] Sec. 22(n)(1) of the 1939 Code provides that AGI equals gross income less "deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee".  Sec. 23(a)(1) of the 1939 Code allows for the deduction of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  The language of secs. 22(n)(1) and 23(a)(1) is essentially verbatim with the language of secs. 62(a)(1) and 162(a), respectively.

Subsequently, in Polk v. Commissioner, supra at 414-415, this Court held that interest on an income tax deficiency stemming from the Commissioner's revaluation of the taxpayer's livestock inventory was deductible as a business expense for purposes of computing an NOL.  In so holding, this Court stated that the case was "clearly controlled" by Standing.  Polk v. Commissioner, supra at 415.  We also stated that the deficiency interest was deductible as a business expense because the deficiency "arose in connection with * * * [the taxpayer's] business, and was proximately related thereto, and that the same must be said of the interest paid thereon."  Id. at 415.  We distinguished Maxcy v. Commissioner, 26 T.C. 526 (1956), on which the Commissioner relied, by concluding:

> The Opinion in that case includes the following (p.
> 527):  "The burden is on * * * [the taxpayer] to
> demonstrate the clear allowability of the deduction.
> This burden he has failed to carry."
>
>      In the instant case, however, as in Standing,
> supra, * * * [the taxpayer's] burden is clearly and
> fully met.  We have carefully reexamined the problem,
> and we see no occasion to depart from the reasoning and
> principles established by the Court of Appeals for the
> Fourth Circuit, and by this Court, in Standing.  [Polk
> v. Commissioner, supra at 415.]

On appeal, the Court of Appeals for the Tenth Circuit agreed that these amounts were deductible.  Commissioner v. Polk, 276 F.2d at 604.  According to the court, a taxpayer may compute an NOL by deducting deficiency interest from gross income as a business expense if the interest is an ordinary and necessary expense incurred in the operation of the business.  The court stated that the assessment of additional income taxes related to

the valuation of livestock is ordinary and necessary to the conduct of a livestock business because people may disagree on the value of livestock.  Id. at 603.

Shortly thereafter, this Court reached a result consistent with Polk and Standing in our Court-reviewed opinion in Reise v. Commissioner, 35 T.C. 571 (1961), affd. 299 F.2d 380 (7th Cir. 1962).  We held in Reise that State income taxes, deficiencies in State income taxes, interest on State and Federal income taxes, and litigation expenses relating primarily to an individual's business income were deductible as ordinary and necessary business expenses in computing an NOL carryback.  We carefully reviewed the relevant statutes, the legislative history, the administrative interpretations of these provisions, and the caselaw (including Polk, Standing, Maxcy, and Aaron).  We concluded that Standing and Polk are "sound and correct", and Aaron is not.  Id. at 579.  We applied the rationale of Polk and Standing, and we overruled Aaron as an improper and incorrect construction of section 122(d)(5) of the 1939 Code.[4]  Id. at 579.

This and other Courts have steadfastly followed the judicial reasoning that we enunciated in Reise, Polk, and Standing. Indeed, in Estate of Broadhead v. Commissioner, T.C. Memo 1966-26, affd. 391 F.2d 841 (5th Cir. 1968), we were obliged to distinguish Standing, in holding that the taxpayer could not claim a business expense deduction for interest on his Federal

---

[4] The text of sec. 122(d)(5) of the 1939 Code is virtually identical to the text of sec. 172(d)(4).

income tax deficiencies because he failed to show that the deficiencies were related to his business income. Similarly, in Tanner v. Commissioner, 45 T.C. 145, 149-150 (1965), affd. per curiam 363 F.2d 36 (4th Cir. 1966), we were obliged to distinguish Standing, in refusing to allow a deduction for State income taxes under former section 62(a)(1). We reasoned that, whereas former section 62(a)(1) was silent on the deductibility of interest and legal expenses attributable to the underpayment of business income, former section 62(a)(1) and its legislative history clearly barred an individual from deducting the State income taxes on business income.

It is with this backdrop that I proceed to address the validity of the regulations at hand. The Commissioner claims that she validly prescribed section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), based on the legislative history of section 163(h) and the Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 266 (J. Comm. Print 1987) (the 1986 Bluebook).[5]

---

[5] The Joint Committee of Taxation for the 100th Congress (Joint Committee) consisted of five Senators and five members of the House of Representatives. The 1986 Bluebook, at II. The 1986 Bluebook was prepared by the Staff of the Joint Committee, in consultation with the staffs of the House Ways and Means Committee and the Senate Finance Committee. Letter from David H. Brockway, Chief of Staff, to the Hon. Dan Rostenkowski, Chairman, and the Hon. Lloyd Bentsen, Vice-Chairman, id. at XVII. According to Mertens, Law of Federal Income Taxation, sec. 3.20, at 31 (1994):

> The purpose of the Blue Book is to provide, in one volume, a compilation of the legislative history of a piece of tax legislation. While the document is most
> (continued...)

According to her, the Congress enacted section 163(h), in part, to prohibit an individual from deducting interest on an income tax liability attributable to his or her trade or business.  I disagree.

First, there is no reason to resort to the legislative history of section 163(h).  A statute speaks for itself, and its legislative history should be sought to embellish the text only when the meaning of the words therein are "inescapably ambiguous".  <u>Garcia v. United States</u>, 469 U.S. 70, 76 n.3 (1984); see also <u>Ex parte Collett</u>, 337 U.S. 55 (1949).  The relevant text of section 163(h) reads:

> In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.
>
> * * * the term "personal interest" means any interest * * * other than--
>
>> * * * interest paid or accrued on indebtedness properly allocable to a trade or business * * *  [Sec. 163(h)(1) and (2)(A).]

This text is not ambiguous.  Interest paid on a debt that is <u>properly allocable</u> to a trade or business is <u>not</u> personal interest under section 163(h).  Given the clarity of this text, the beginning and end of our inquiry should be the statutory text, and we should apply the plain and common meaning of the

------

(...continued)
helpful as a handy reference volume it also gives some guidance.  <u>Where the Blue Book's explanation differs from that in a conference report it may serve to alert the reader that a technical correction is needed to reconcile the views</u>.  [Emphasis added.]

statute.[6]  <u>TVA v. Hill</u>, 437 U.S. 153 (1978); <u>United States v.</u>

<u>American Trucking Associations</u>, 310 U.S. 534, 543-544 (1940).  As

the United States Supreme Court has said:

> canons of construction are no more than rules of thumb
> that help courts determine the meaning of legislation,
> and in interpreting a statute a court should always
> turn first to one, cardinal canon before all others.
> We have stated time and time again that courts must
> presume that a legislature says in a statute what it
> means and means in a statute what it says there.  * * *
> When the words of a statute are unambiguous, then, this
> first canon is also the last:  judicial inquiry is
> complete.  [<u>Connecticut Natl. Bank v. Germain</u>, 503 U.S.
> 249, 253-254 (1992); citations and quotation marks
> omitted.]

Although a plain reading of the statute is ordinarily

conclusive, I recognize that a clear legislative intent that is

contrary to the text may sometimes lead to a different result.

---

[6] Indeed, the Commissioner has done just that with respect
to the term "properly allocable".  The Commissioner prescribed
sec. 1.163-8T, Temporary Income Tax Regs., to determine the
amount of interest that is properly allocable to a trade or
business.  Sec. 1.163-9T(b)(1)(i), Temporary Income Tax Regs.,
52 Fed. Reg. 48409 (Dec. 22, 1987).  Sec. 1.163-8T(a)(3),
(4)(i)(A), (b)(7), and (c)(3)(ii), Temporary Income Tax Regs.,
52 Fed. Reg. 24999-25001 (July 2, 1987), provides that interest
is properly allocable to a trade or business to the extent that
the proceeds of the underlying debt are traceable to an
"expenditure * * * in connection with the conduct of any trade or
business".  But for sec. 1.163-9T(b)(2)(i)(A), Temporary Income
Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987) there should be no
dispute that petitioners may deduct their deficiency interest
because the interest is connected to the Federal income taxes
that they must pay on their business income.  <u>Fort Howard Corp.</u>
<u>and Subs. v. Commissioner</u>, 103 T.C. 345, 352 (1994) (an expense
is incurred "in connection with" the conduct of a trade or
business if it is associated with or logically related); <u>Polk v.</u>
<u>Commissioner</u>, 31 T.C. 412, 415 (1958) (deficiency interest
deductible as a business expense because the deficiency "arose in
connection with * * * [the taxpayer's] business, and was
proximately related thereto, and that the same must be said of
the interest paid thereon"), affd. 276 F.2d 601 (10th Cir. 1960);
see also <u>Reise v. Commissioner</u>, 35 T.C. 571 (1961), and the cases
cited therein, affd. 299 F.2d 380 (7th Cir. 1962).

Consumer Product Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); see also Halpern v. Commissioner, 96 T.C. 895, 899 (1991) (only "unequivocal evidence" of legislative purpose in the history to a statute may override the plain meaning of the words therein). I find no clear and unequivocal legislative intent that would support the Commissioner's taking a position in section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., that is inconsistent with the statute. The conference report to the TRA states that "Personal interest is any interest, other than interest incurred or continued in connection with the conduct of a trade or business (other than the trade or business of performing services as an employee), investment interest, or interest taken into account in computing the taxpayer's income or loss from passive activities for the year." H. Conf. Rept. 99-841, at II-154 (1986), 1986-3 C.B. (Vol. 4) at 154; see also S. Rept. 99-313, at 804-806, 1986-3 C.B. (Vol. 3) at 804-806. Although the conference report further states that "Personal interest also generally includes interest on tax deficiencies", H. Conf. Rept. 99-841, at II-154, 1986-3 C.B. (Vol. 4) at 154, I agree with the majority that this reference is to tax deficiencies that are not business related. I do not believe that the Congress meant to change sub silentio the pre-existing judicial view that interest on income tax deficiencies attributable to a trade or business is deductible. I conclude that the disallowance for personal interest in section 163(h)(2) relates only to interest not qualifying as a trade or business

expense under sections 62(a)(1) or 162(a).

My conclusion is not changed by the broad interpretation given to section 163(h)(2) by the Joint Committee in the 1986 Bluebook.  I give little weight to this broad interpretation. Flood v. United States, 33 F.3d 1174, 1178 (9th Cir. 1994); Slaven v. BP America, 973 F.2d 1468, 1475 (9th Cir. 1992). The 1986 Bluebook is not legislative history; it was written after the enactment of the TRA.  See Flood v. United States, supra at 1178; McDonald v. Commissioner, 764 F.2d 322, 336-337 n.25 (5th Cir. 1985), affg. T.C. Memo. 1983-197; Mertens, Law of Federal Income Taxation, sec. 3.20, at 31 (1994).  It was not approved by the Congress before its release.  See Estate of Hutchinson v. Commissioner, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. T.C. Memo. 1984-55.  It does not comport with the text of section 163(h) or the legislative history thereunder. I recognize that both the United States Supreme Court and this Court have relied on the Blue Book, see, e.g., FPC v. Memphis Light, Gas & Water Div., 411 U.S. 458, 471-472 (1973); Estate of Sachs v. Commissioner, 88 T.C. 769, 775 (1987), affd. in part and revd. in part 856 F.2d 1158 (8th Cir. 1988), and that it is entitled to great respect, Estate of Hutchinson v. Commissioner, supra at 669-670; McDonald v. Commissioner, supra at 336-337 n.25.  All the same, we should not be bound by statements in the 1986 Bluebook that are unsupported by and contrary to section 163 and its legislative history.

The nuts and bolts of this case is that the Commissioner

continues to disagree with the pre-TRA judicial view that an individual engaged in a trade or business may deduct from gross income the amount of interest on a Federal income tax liability that is attributable to his or her business. Thus, the Commissioner prescribed her position into section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., under the guise of the TRA's amendments to section 163. Section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., is inconsistent with section 163(h). The nondeductibility of personal interest does not apply to interest on a Federal income tax liability that is properly allocable to a trade or business. Sec. 163(h)(2)(A). Interest on a Federal income tax liability that is properly allocable to a trade or business is deductible under section 162(a) if the incurrence of the interest is ordinary and necessary to the trade or business. If the Congress had intended to disallow any deduction for deficiency interest that was an ordinary and necessary business expense under section 162(a), the Congress would have said so. Instead, the Congress clearly stated that personal interest does not include "interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee)". Sec. 165(h)(2)(A). Because the Commissioner's prescription of section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., is inconsistent with the statute (and is not within the "legislature's revealed design" for the TRA's amendments to section 163, Nationsbank v. Variable Annuity Life Ins. Co., 513

U.S. \_\_\_, \_\_\_, 115 S.Ct. 810, 813-814 (1995)), I concur in the majority's holding that it is outside the bounds of her regulatory authority under section 7805(a).[7]  Section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., is invalid.  Accord Professional Equities, Inc. v. Commissioner, 89 T.C. 165 (1987); Stephenson Trust v. Commissioner, 81 T.C. 283 (1983); see RLC Industries Co. v. Commissioner, 58 F.3d 413, 418 (9th Cir. 1995), affg. 98 T.C. 457 (1992).

SWIFT, WRIGHT, PARR, and VASQUEZ, JJ., agree with this concurring opinion.

---

[7] I note that the Commissioner's position in the instant case is inconsistent with a recent administrative position of hers.  In Rev. Rul. 92-29, 1992-1 C.B. 20, the Commissioner modified Rev. Rul. 70-40, 1970-1 C.B. 50, to state that sec. 62(a)(1) allows an individual to deduct litigation expenses incurred in determining State and Federal income taxes on income derived from his or her trade or business.  The recent ruling also states that an individual may deduct the portion of a tax preparation fee that is attributable to his or her sole-proprietor business.  Given the Commissioner's position with respect to these litigation expenses and tax preparation fees, I am unable to fathom why she continues to believe that the interest on a tax deficiency that is allocable to a trade or business is not also deductible.

RUWE, J., dissenting:  I disagree with the majority for reasons already well stated by the Court of Appeals for the Eighth Circuit in Miller v. United States, 65 F.3d 687 (8th Cir. 1995).  Since there is no need to repeat those reasons, I shall confine myself to addressing several aspects of the majority opinion not addressed in Miller.

First, I do not believe that the conference committee's use of the word "generally" supports the majority's reasoning.  The conference committee report states:  "Personal interest also generally includes interest on tax deficiencies".  H. Conf. Rept. 99-841, at II-154 (1986), 1986-3 C.B. (Vol. 4) 1, 154.  The majority seizes upon the word "generally" and reasons that Congress could not have intended to declare that all interest on "income" tax deficiencies is personal interest.  However, in the conference committee report, the word "generally" modifies "tax deficiencies", not "income tax deficiencies".  The term "tax deficiencies", which also includes estate and gift tax deficiencies, is obviously broader than the term "income tax deficiencies".  Congress statutorily excluded some interest on tax deficiencies from the "personal interest" definition by specifically providing in section 163(h)(2)(E) that interest on estate taxes imposed by section 2001 is, in certain circumstances, not personal interest.  Therefore, the use of the word "generally" in the conference committee report was both technically correct and consistent with the regulation's holding that all interest on individual income tax deficiencies is

personal interest. Indeed, use of the word "generally" indicates that allowing interest on a "tax deficiency" would be an exception to the norm, such as provided for by section 163(h)(2)(E), and would not include the very common situation where an "income tax deficiency" is based on adjustments to items reported on an individual's Schedule C.

Second, the body of case law relied upon by the majority found its genesis to a large extent in the failure of section 22(n) of the Internal Revenue Code of 1939 to directly address whether an individual was entitled to deduct interest on an income tax deficiency attributable to a trade or business and the lack of legislative history and regulations on the subject. See Commissioner v. Standing, 259 F.2d 450 (4th Cir. 1958), affg. 28 T.C. 789 (1957). However, in Tanner v. Commissioner, 45 T.C. 145, 150 (1965), affd. 363 F.2d 36 (4th Cir. 1966), where we held that an individual taxpayer was not allowed to deduct State individual income taxes as a business expense, we observed:

> In reaching its conclusion [in Standing], the court pointed out that neither the committee reports nor the regulations with respect to section 22(n)(1) specifically mentioned interest on tax deficiencies with respect to business income or legal expenses incurred in contesting such deficiencies. The same cannot be said, of course, with respect to State income taxes. As pointed out hereinabove, both the committee reports and the regulations specifically state that State income taxes, even though incurred as a result of business profits, are not deductible in computing adjusted gross income.

Like the situation presented to us in Tanner, both the legislative history and contemporaneous regulations support a

holding that the interest paid on petitioners' late income tax payment constitutes nondeductible "personal interest".

Third, the majority expresses concern that the regulation in issue "discriminates against the individual who operates his or her business as a proprietorship instead of in corporate form where the limitations on the deduction of 'personal interest' would not apply." See majority op. p. 15. The short answer to this is that Congress, when it enacted section 163(h) disallowing personal interest, excluded corporate taxpayers from its provisions. Surely, the majority does not question Congress' authority to allow corporations, which are treated as separate taxable entities, to deduct items that individuals may not. But if the majority is concerned about discrimination, it should observe that the result it reaches produces an even greater disparity of treatment between individual taxpayers. While the majority would allow a business deduction for interest on income tax deficiencies attributable to adjustments to proprietorship income, interest on individual tax deficiencies attributable to businesses operated as partnerships and subchapter S corporations is not deductible as a business expense. Thus, even for taxable years ending prior to the effective date of section 163(h), it has been held that interest on an individual's income tax deficiency attributable to adjustments to the income of a partnership or an S corporation was not deductible as a business expense by an individual partner or shareholder. True v. United States, 35 F.3d 574 (10th Cir. 1994), affg. without published

opinion[1] 93-2 USTC par. 50,461, 72 AFTR2d 93-5660 (D. Wyo. 1993). Consistent treatment of individual taxpayers can be best achieved by recognizing that interest on individual income tax deficiencies is personal interest regardless of whether the adjustment giving rise to the deficiency pertains to a proprietorship, a partnership, or an S corporation.

An individual's income tax liability is based on an amalgamation of income derived from all sources and deductions, credits, exclusions, exemptions, filing status, income bracket, and other considerations. Income from an unincorporated business is merely one of the many components necessary to determine what is still in essence a tax on an individual's personal accessions to wealth from whatever source derived. See James v. United States, 366 U.S. 213, 219 (1961). Interest on a individual's income tax liability represents a personal expense because the underlying tax obligation is personal. See Miller v. United States, supra at 691.

HAMBLEN, CHABOT, COHEN, GERBER, HALPERN, and BEGHE, JJ., agree with this dissent.

---

[1] A copy of the unpublished opinion of the Court of Appeals for the Tenth Circuit in True v. United States that appears at 74 AFTR2d 94-6253, is appended. Although citation of unpublished opinions of the Court of Appeals for the Tenth Circuit remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document. See General Order of Nov. 29, 1993, suspending 10th Cir. Rule 36.3.

APPENDIX


JEAN D. TRUE; H.A. TRUE, JR.; H.A. TRUE, III;
KAREN S. TRUE; DIEMER D. TRUE; SUSAN L. TRUE;
DAVID L. TRUE; MELANIE A. TRUE, PLAINTIFFS-
APPELLANTS v. U.S., DEFENDANT-APPELLEE. U.S. Court of Appeals,
Tenth Circuit, No. 93-8092, Aug. 26, 1994.  District Court, 72
AFTR 2d 93-5660, affirmed.  Decision for Govt.


        MOORE, Circuit Judge:


Order and Judgment


        Before MOORE, SETH, and TACHA, Circuit Judges:[**]
        Plaintiffs in these consolidated cases appeal from a summary judgment motion in favor of the government.  They seek an income tax refund claiming the IRS improperly calculated their alternative minimum tax.  They contend the correct computation permits them to fully deduct as a business expense interest paid on income tax deficiencies relating to their various business entities.  According to their treatment of the interest, plaintiffs owe no alternative minimum tax.  Finding no legal support for that position, we affirm.

        H.A. True, Jr.,[1] his wife, and three of their children are owners of numerous ranching and energy-related businesses operated as partnerships and S corporations.  In 1986, the IRS advised taxpayers to pay disputed tax deficiencies and associated interest because, after 1986, interest on most tax deficiencies would not be fully deductible.  Accordingly, in 1986, plaintiffs (the business owners and their spouses) paid, for various previous tax years, contested taxes and penalty interest relating "nearly exclusively" to their businesses.  On their 1986

---

        [**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993.  151 F.R.D. 470.

        [1] Mr. True died during the course of this litigation.  As personal representatives of his estate, his wife and the three of his children involved in this case have been substituted as parties for Mr. True.

individual income tax returns, plaintiffs fully deducted these interest payments from gross income as a business expense. The IRS disallowed these "above the line" deductions, but allowed plaintiffs to deduct the interest "below the line" from their adjusted gross incomes. The IRS's treatment of the 1986 interest payments did not change plaintiffs' regular tax liability but created alternative minimum tax liability which plaintiffs believed they did not owe. Plaintiffs paid the disputed alternative minimum tax and associated interest. They sought a refund of this money from the IRS, which denied the claim, and then filed this action in the district court. On cross-motions for summary judgment, the district court granted judgment to the government.

The district court determined the tax code classifies the 1986 interest payments as a personal rather than a business expense. The court asserted a sole proprietor could deduct this interest as a personal business expense. However, unlike the situation with sole proprietorships, partnerships and S corporations are separate entities from partners and shareholders for the purpose of characterizing income and deducting business expenses. Therefore, if the interest payments are a business expense, the deduction would occur on the partnership or corporate level before the determination of the distributive shares of the businesses' incomes.[2] Plaintiffs must endure the consequences of their choice of business form. Because they own shares of partnerships and S corporations, their 1986 interest payments are personal deductions.

Plaintiffs argue they have no alternative minimum tax liability. They claim the interest payments represent a business expense because the complexity of income tax laws creates legitimate disputes about the amount of tax owed, and, thus, deficiency interest is an ordinary and necessary expense of operating a business. They argue when deficiency interest is deducted as a business expense from gross income to arrive at adjusted gross income, the staring point for calculating alternative minimum tax, no alternative minimum tax liability occurs. To support their contention the interest constitutes a business expense, plaintiffs argue a sole proprietor could deduct this interest as a business expense; therefore, equity demands partners and S corporation shareholders receive the same tax treatment. Pointing to cases involving legal fees and employee benefits, plaintiffs assert partners may deduct personally-paid partnership-related expenses as business expenses. Furthermore, because partnerships and S corporations pass their tax liability

_____

[2] The court noted the irony that the corporations and partnerships cannot deduct the 1986 interest payments because they have no obligation to pay taxes or interest on tax deficiencies.

onto their owners rather than pay taxes themselves, plaintiffs point out these entities cannot account for deficiency interest in determining distributable income.  The partners and shareholders, therefore, may deduct deficiency interest attributable to the entities as a business expense on their individual returns.

The government argues the interest payments are a personal rather than a business expense.  Partnerships and S corporations are entities separate from their owners for the purposes of calculating income and deductions.  Therefore, if the 1986 interest represents a business expense, the expense and deduction belong to the partnership or corporate entities.  However, because partnerships and S corporations have no federal income tax liability, they bear no responsibility for interest on unpaid taxes and, thus, they cannot consider penalty interest a business expense.  The government adds, contrary to the district court's conclusion, sole proprietors generally cannot deduct deficiency interest as a business expense because deficiency interest does not constitute an ordinary and necessary expense of operating a business.[3]  Penalty interest constitutes the cost of not paying the correct amount of taxes and not the cost of producing the taxable income.  Therefore, a sole proprietor, like an employee, cannot deduct this interest as a business expense and neither can partners and S corporation shareholders.

We review de novo a grant of summary judgment.  Phillips Petroleum Co. v. Lujan, 4 F.3d 858, 860 (10th Cir. 1993) (citation omitted).  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The alternative minimum tax imposes additional income taxes on individual taxpayers for whom a portion of their alternative minimum taxable income exceeds their regular tax liability.  I.R.C. section 55(a).[4]  Adjusted gross income serves as the starting point for calculating alternative minimum taxable income and, thus, the alternative minimum tax.  I.R.C. section 55(b).  To determine adjusted gross income, a taxpayer lessens gross income by several "above the line" deductions including allowable deductions "attributable to a trade or business carried on by the taxpayer" if the trade or business does not amount to the taxpayer's services as an employee.  I.R.C. section 62(l).  The code defines business expenses as "all the ordinary and necessary

---

[3] The government goes on to contend an individual taxpayer can never deduct deficiency interest from gross income as a business expense.

[4] Citations to the tax code refer to the amended provisions of the 1954 code effective in 1986.

expenses paid or incurred during the taxable year in carrying on any trade or business."  I.R.C. section 162(a).  An individual taxpayer reduces adjusted gross income by enumerated items, including a limited amount of qualified interest, as part of the computation of alternative minimum taxable income.  I.R.C. section 55(b)(1), (e)(1)(D), (e)(3).  The denouement of these statutory machinations is a taxpayer calculating alternative minimum tax liability can fully deduct interest that constitutes a business expense.  However, he or she cannot fully deduct any other interest to the extent it exceeds the cap on qualified interest.

The deficiency interest paid by plaintiffs exceeded the amount they were entitled to deduct as qualified interest; thus, plaintiffs may only fully deduct the deficiency interest if it constitutes a business expense.  We conclude the penalty interest represents a personal expense because the obligation to pay taxes is personal to plaintiffs.

With a few exceptions inapplicable to this controversy, partnerships and S corporations calculate and report their taxable income in the same manner as individual taxpayers, but these entities do not incur tax liability.[5]  I.R.C. sections 701, 703, 1363(a), 1363(b), 6031(a), 6037(a).  Instead, the partners and shareholders pay taxes on their shares of the partnerships' and S corporations' various items of income, gain, loss, deduction and credit.  I.R.C. sections 701, 702(a), 1366(a).[6]  A

---

[5] Certain circumstances not relevant here will result in tax liability for an S corporation.  See I.R.C. section 1363(a).

[6] The Supreme Court has noted a partnership is a separate entity from its partners for the purpose of calculating and reporting its income but has no bearing on the partners' individual tax liability for the partnership's income.  United States v. Basye, 410 U.S. 441, 448 (1973).

In advocating their opposing arguments, plaintiffs and the government have suggested Commissioner v. Polk, 276 F.2d 601 (10th Cir. 1960), disposes of this controversy.  In Polk, we considered whether interest paid on a tax deficiency arising from an individual's livestock business qualified as a deduction "attributable to the operation of a trade or business" to compute a net operating loss under 122(d)(5) of the 1939 tax code.  To determine the interest's deductibility, the court examined whether the interest fell within the category of ordinary and necessary business expenses deductible from gross income as provided in 23(a)(1)(A) of the 1939 code, the precursor to section 162(a).  Polk, 276 F.2d at 602.  The court noted the facts of each case determine whether penalty interest qualifies

(continued...)

partner or shareholder's individual obligation to pay taxes also includes the personal responsibility to pay any tax deficiency arising from incorrect returns and the associated penalty interest. Because the duty to pay penalty interest is personal to the individual partner or shareholder, penalty interest cannot constitute a business expense.[7]

Plaintiffs, having chosen to operate their businesses as partnerships and S corporations, bear personal responsibility for tax deficiencies and the associated interest attributable to their businesses. As a result, they cannot deduct the penalty interest they paid in 1986 from gross income as a business expense pursuant to I.R.C. section 62(l). Plaintiffs, therefore, are not entitled to a refund of their alternative minimum tax. The judgment of the district court is AFFIRMED.

--------

(...continued)
as ordinary business expenses. Id. at 603. Generally, interest on a deficiency assessment is not an ordinary by product of business operations and is not deductible. Id. However, deficiency interest may be deducted where the nature of the business leads to the expectation that on numerous occasions a taxpayer acting in good faith to evaluate inventories, which form a part of his or her return, will nevertheless fail to evaluate them properly. Id. at 603 & n.1. The court concluded the taxpayer's livestock business fit this exception because "qualified minds" may differ over the valuation of livestock. Id. at 603.

We believe, as did the panel presiding in Polk, that Polk settled a unique controversy. The parties have not presented any facts nor can we imagine another situation in which penalty interest would be an ordinary and necessary expense of operating a trade or business. Furthermore, Polk has no relevance here because it involved a taxpayer operating a sole proprietorship rather than a partnership or S corporation.

[7] This liability is in addition to, and separate from, the direct liability of a corporate employer. Section 6672 is not in issue in this case.

HALPERN, J., dissenting:

I. Introduction

Section 163(h)(2)(A) exempts from the category of personal interest (which is nondeductible for individuals): "interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee)".

The majority finds that a reasonable interpretation of that exemption includes the interest here in question. The majority holds that, if the tracing rules of section 1.163-8T, Temporary Income Tax Regs., require a contrary conclusion, then, to that extent, the tracing rules are invalid. If the tracing rules of section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987), do not require a contrary conclusion, but the specific rule of section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec 22, 1987), does, then the majority holds that that specific rule is invalid.

In so holding, the majority departs from the Supreme Court's teachings in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-844 (1984), and NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. ___, 115 S. Ct. 810, 813-814 (1995). I believe that application of those decisions leads to the conclusion that the temporary regulations at issue are valid, which leads to a decision for respondent.

II. In the Absence of Regulations

I agree that, in the absence of temporary regulations, a

reasonable interpretation of section 163(h)(2)(A) would include the interest here in question. First, it is reasonable to treat a deficiency in tax as giving rise to an indebtedness to the Government in the amount of the deficiency and to treat the interest allocable to the deficiency as interest paid or accrued on that indebtedness. See discussion _infra_ sec. III.C.2.a. Second, any tax paid with respect to income is an expense associated with that income, at least in the sense that the income is causal of the expense. Interest on a deficiency in income tax (hereafter, deficiency interest), or interest on a borrowing to pay an income tax, likewise is an expense associated with the income subject to tax. With respect to both such tax and such interest, only the after-tax-after-interest amount is available for consumption or as an addition to savings. Whether such aftercosts themselves constitute consumption is the real question here at issue. In the absence of any exposition in the statute of the term "properly allocable", and in light of Congress' history (explained _infra_) of treating Federal income taxes as _not_ a consumption expense, I think that it is reasonable to conclude that deficiency interest attributable to nonemployee trade or business income (hereafter, simply trade or business income) is properly allocable to such income and, thus, is not personal interest. However, because Congress changed its mind, and now treats Federal income taxes as a consumption expense (i.e., Federal income taxes are _not_ deductible), I think that it is equally reasonable to conclude that deficiency interest attributable to trade or business income _is_ personal interest.

Because a reasonable case can be made for the proposition that all deficiency interest is personal interest, the temporary regulations are valid, and we must sustain them.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra; NationsBank v. Variable Annuity Life Ins. Co., supra.

III.  Section 1.163-8T and 9T, Temporary Income Tax Regs., Is Valid

A.  Standard of Review

The majority sets forth the proper standard for reviewing a regulation.  Majority op. pp. 12-13.  The majority, I submit, misapplies that standard.

The narrow question before us is whether section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., is valid, insofar as it applies to the facts of the instant case.  Therefore, in order to properly decide that issue, we must, in accordance with the teaching of NationsBank v. Variable Annuity Life Ins. Co., supra, answer two questions.  First, is section 163(h) silent or ambiguous with respect to either:  (a) The standard for determining which items of indebtedness are "properly allocable" to a trade or business, or (b) "the specific issue at hand", which is whether interest paid with respect to an individual's Federal income tax liability is deductible?  NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. at __, 115 S. Ct. at 813-814.  Second, is section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., a permissible interpretation of section 163(h) in that it "fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design"?

NationsBank v. Variable Annuity Life Ins. Co., supra at 813-814.

In this case, my answer to each of the above questions is yes.  Therefore, section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., is valid and must be given "controlling weight".  NationsBank v. Variable Annuity Life Ins. Co., supra at 813-814.

B.  An Ambiguous Statute

Section 163(h) was added to the Code by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 511(b), 100 Stat. 2085, 2246.  In the case of individual taxpayers, section 163(h)(1) disallows a deduction for all personal interest paid or accrued during the taxable year.  Section 163(h)(2) then provides that all interest is personal interest unless that interest falls into one of the five exceptions listed in paragraph (2).  The only relevant exception for our purposes is contained in subparagraph (A), which provides that the term "personal interest" does not include "interest paid or accrued on indebtedness properly allocable to a trade or business".  Sec. 163(h)(2)(A) (emphasis added).

The term "properly allocable" is ambiguous, because Congress has not indicated the method by which, or the assumptions under which, taxpayers, the Service, and the courts are to decide whether a particular indebtedness is "properly allocable" to a trade or business.  Clearly, there is more than one way to allocate interest.  Compare, for example, the asset based apportionment method found in section 265(b)(2) with the tracing method outlined in section 1.163-8T(a)(3), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987).  More importantly, the statute is silent with respect to the specific issue at hand--

whether interest with respect to an individual's Federal income tax liability is deductible.  For the foregoing reasons, the first requirement of the NationsBank teaching is satisfied.

####    C.    The Temporary Regulations Promulgated Under Section 163(h) Are Permissible Agency Interpretations

#####        1.    Section 1.163-8T, Temporary Income Tax Regs. Is Valid

In order to give meaning to the term "properly allocable", and thereby implement section 163(h)(2)(A), the Secretary has promulgated section 1.163-8T, Temporary Income Tax Regs.  The focus of the temporary regulations is on the relationship between an individual's debts and her activities.  That is because, under section 163(h)(2)(A), interest piggybacks on indebtedness, and it is the allocation of a particular indebtedness to a trade or business that establishes the deductibility of the related interest:  "interest paid or accrued on indebtedness properly allocable to a trade or business".  Sec. 163(h)(2)(A) (emphasis added).  The general rule of the temporary regulations is that interest on indebtedness is allocated in the same manner in which the underlying debt is allocated.  Sec. 1.163-8T(a)(3), Temporary Income Tax Regs.  "Debt", the temporary regulations prescribe, "is allocated by tracing the disbursements of the debt proceeds to specific expenditures."  Id.  Thus, for interest to be deductible pursuant to section 163(h)(2)(A), the interest must be traceable to a debt-financed trade or business expenditure (i.e., an expenditure made in connection with the conduct of a trade or business).  See sec. 1.163-8T(a)(4)(ii), (b)(7), and (c), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987).

For example, if an individual borrows money to take a vacation in Spain, securing her debt with a mortgage on her business, the interest on the borrowed funds is personal interest notwithstanding that the debt is secured by business property. See sec. 1.163-8T(c)(1) Example, Temporary Income Tax Regs. The bulk of section 1.163-8T, Temporary Income Tax Regs., is devoted to prescribing rules for tracing debt to specific expenditures.

The tracing approach selected by the Secretary may at times appear wooden and mechanical. Thus, an individual with $100 in savings and two obligations, one to pay $100 to her employees and one to pay $100 towards her vacation in Spain, can dictate the tax result of borrowing $100 to pay one of those obligations by deciding which one to pay with the borrowed $100. Nevertheless, the tracing approach leaves little room for ambiguity as to whether an indebtedness is business related, at least in the case of debt financed expenditures that are clearly business or personal.

The legislative history of section 163(h) indicates a Congressional purpose to end the deduction for interest on debt incurred to fund consumption, or personal, expenditures. S. Rept. 99-313 (1985), 1986-3 C.B. (Vol. 3) 804; H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 154. By requiring the manner in which borrowed funds are expended to determine whether the interest on those funds is deductible, the Secretary has defined the term "properly allocable" in a way that is "reasonable in light of the legislature's revealed design". NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. at __, 115 S. Ct. at

813-814.  Indeed, in developing the tracing method of interest allocation in the temporary regulations, the Secretary seriously considered an alternative of requiring an allocation method based on pro rata apportionment of interest expense among a taxpayer's assets.  T.D. 8145, 1987-2 C.B. 47, 50.  The Secretary rejected that approach, at least for the present, because of "the practical and theoretical problems that a comprehensive pro rata apportionment system would present".  Id.  No doubt, those problems included the allocation of deficiency interest among personal and business assets.  Clearly, the problem facing the Secretary in determining how properly to allocate interest is very much larger than the narrow question addressed by the majority.  Moreover, nothing in the majority's opinion suggests that, on an overall basis, the tracing method of allocation adopted by the Secretary is other than an acceptable choice among permissible interpretations of the statute:  "The choice among reasonable interpretations is for the Commissioner, not the courts."  National Muffler Dealers Association Inc. v. United States, 440 U.S. 472, 488 (1979).  The majority's quarrel is not with the Secretary's choice of a method of allocation, which goes only so far as to allocate deficiency interest to a borrowing to pay taxes.  The majority's quarrel is with the further conclusion, expressed in section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., that income taxes on business income are not an expenditure made in connection with a trade or business.  Section 1.163-8T, Temporary Income Tax Regs. is valid.

2. Section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., Also Is Valid

a. Are Petitioners' Tax Payments Made in Connection With Their Trade or Business?

The majority invalidates section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs. Subdivision (A) of section 1.163-9T(b)(2)(i), Temporary Income Tax Regs., provides that personal interest includes interest:

Paid on underpayments of individual Federal, State or local income taxes and on indebtedness used to pay such taxes (within the meaning of §1.168-8T), regardless of the source of the income generating the tax liability;

The obligation to pay deficiency interest arises if a taxpayer fails to make a timely payment of her tax liability, as finally determined. See sec. 6601(a). For there to be any possibility that deficiency interest is deductible under section 163(h)(2)(A), we must assume that the underpayment giving rise to deficiency interest is an indebtedness of the taxpayer. See sec. 163(h)(2)(A). Moreover, the tracing rules of section 1.163-8T, Temporary Income Tax Regs., require the taxpayer to identify (1) the proceeds resulting from any indebtedness and (2) the disbursement of those proceeds to specific expenditures. Sec. 1.163-8T(a)(3), Temporary Income Tax Regs. Only if the specific expenditures so identified are business expenditures within the meaning of section 1.163-8T(b)(7), Temporary Income Tax Regs., would the related deficiency interest be deductible under section 163(h)(2)(A). Sec. 1.163-8T(a)(4)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987). Of course,

an underpayment of income tax does not give rise to identifiable proceeds received from the Government. The temporary regulations address the situation of unidentifiable debt proceeds under the heading "Debt assumptions not involving cash disbursements." Section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., provides:

> If a taxpayer incurs or assumes a debt in consideration for the sale or use of property, for services, or for any other purpose, or takes property subject to a debt, and no debt proceeds are disbursed to the taxpayer, the debt is treated for purposes of this section as if the taxpayer used an amount of the debt proceeds equal to the balance of the debt outstanding at such time to make an expenditure for such property, services, or other purpose. [Emphasis added.]

An individual making an underpayment of tax is thus treated as if she incurred an indebtedness equal to the amount of such underpayment and used the proceeds of the indebtedness to eliminate the underpayment. Such an individual is treated the same as an individual who avoided any underpayment by borrowing from a third party the funds necessary to make a full payment. Indeed, it is difficult to see a tracing system distinguishing between those two cases without getting into the type of apportionment that tracing is designed to avoid. The majority does not distinguish between those two cases.

The real question, of course, is whether interest on borrowed funds expended to discharge an individual's income tax liability is personal interest within the meaning of section 163(h)(2)(A). It is not, on the facts of our case, if petitioners' payments of their 1989 and 1990 Federal income taxes are expenditures made in connection with the conduct of their unincorporated business. See sec. 1.163-8T(a)(4)(i)(A), (b)(7),

and -9T(b)(1)(i), Temporary Income Tax Regs.

### b.  A Conclusion Either Way Is Reasonable

Prior to the War Revenue Act, ch. 63, 40 Stat. 300 (1917), Federal income taxes were deductible.  See, e.g., sec. 5(a) of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 759; Seidman, Seidman's Legislative History of Federal Income Tax Laws 1938-1861, 943-944 (1938) (re: 1917 Act).  Before 1917, Federal income taxes allocable to a business reasonably could be considered a cost of that business, and both any deficiency interest allocable to such taxes and any interest on indebtedness incurred to pay such taxes likewise could be considered a cost of business. Congress, however, has not allowed a deduction for Federal income taxes since such deduction was eliminated by the War Revenue Act, ch. 63, sec. 1201(1), 40 Stat. 300, 330 (1917).[1]  By not allowing a deduction, Congress has signaled that money expended for Federal income taxes constitutes a consumption expenditure, and not a cost of earning income.

Congress' present treatment of Federal income taxes is

---

[1]    See sec. 275(a)(1) (no deduction for Federal income taxes); Seidman, Seidman's Legislative History of Federal Income Tax Laws 1938-1861, 943-944 (1938) (re: 1917 Act).  Sec. 275(a)(1) was added to the Code by section 207 of the Revenue Act of 1964, Pub. L. 88-272, 78 Stat. 19, 40.  Sec. 275(a)(1) merely restates preexisting law (which was contained in sec. 164(b)(1)). Both the Committee on Ways and Means and the Committee on Finance had the following to say about preexisting law:  "Under present law, certain taxes, largely Federal taxes, may not be deducted in any case either as taxes, or as business expenses or as expenses incurred in the production of income."  (Emphasis added.) H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 125, 174 (that report accompanied H.R. 8363, 88th Cong., 1st. Sess., which was enacted as the Revenue Act of 1964, Pub. L. 88-272, 78 Stat. 19); S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 560 (similar).

reasonable.  Plainly, an expenditure made for Federal income taxes is not an expenditure made in consideration of any specific property or service received by the taxpayer.  The payment of Federal income taxes is a civic duty, not a matter of business contract or investment advantage.  All taxpayers, as well as others (citizens and noncitizens) receive benefits on account of the funding of the Federal Government.  The payment of Federal income taxes reduces a taxpayer's wealth otherwise available for consumption.  Thus, Federal income tax payments exhibit characteristics not common to business (or investment) expenditures.  Justice Holmes made a point that serves nicely to emphasize the nonbusiness aspect to tax payments:  "Taxes are what we pay for civilized society".  Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100 (1927) (Holmes, J., dissenting).

If Federal income taxes constitute consumption, and not a trade, business, or investment expense, then, under a tracing rule, such as the rule of section 1.163-8T, Temporary Income Tax Regs., the inescapable, and reasonable, conclusion is that any deficiency interest, or interest on a borrowing to pay income taxes, is personal interest.  The taxpayer's purpose for borrowing the money, or the reason the deficiency arose (e.g., "my accountant made a mistake!") simply is irrelevant.  Though that approach may appear wooden, it is unambiguous.

The rule found in section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., and invalidated by the majority, is nothing more than a fact-specific application of section 1.163-8T,

Temporary Income Tax Regs. It is specific to the fact that Federal taxes are reasonably considered a nondeductible, personal expenditure. Section 1.163-8T, Temporary Income Tax Regs., is a valid regulation and must be given "controlling weight". NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. at __, 115 S. Ct. at 813-814. Accordingly, section 1.163-9T(b)(2)(A), Temporary Income Tax Regs., also is valid.

D.  The Majority's Other Points

The above analysis is sufficient to convince me that the majority has improperly invalidated portions of the temporary regulations. Nonetheless, I will address certain of the majority's other points.

1.  The Legislative History of Section 163(h)

In reaching its holding, the majority relies in part on the scant legislative history behind section 163(h). The majority's main concern lies in the fact that the conference committee report cryptically states that, after the enactment of section 163(h), personal interest will "generally" include interest on tax deficiencies. H. Conf. Rept. 99-841 at II-154 (1986), 1986-3 C.B. (Vol. 4) at 154. The majority asserts that the term "deficiencies" is a term of art and concludes that the word "generally" must mean that Congress intended to carve out from the term "personal interest" the interest on tax deficiencies that are allocable to a trade or business within the meaning of the decisions in Reise v. Commissioner, 35 T.C. 571 (1961), affd. 299 F. 2d 380 (7th Cir. 1962); Polk v. Commissioner 31 T.C. 412 (1958), affd. 276 F.2d 601 (10th Cir. 1960); and Standing v.

Commissioner, 28 T.C. 789 (1957); affd. 259 F.2d 450 (4th Cir. 1958).  Majority op. pp. 20-22.

The majority's conclusion does not necessarily follow from the language in the committee report.  First, whether or not the term "deficiency" has an established meaning for purposes of statutory construction, I am unconvinced that we ought to ascribe to the drafters of a conference report the same care that is supposed in the drafting of statutes.  Moreover, there is at least one instance consistent with the temporary regulations in which deficiency interest paid by an individual is not personal interest.  Prior to the disallowance of a deduction for personal interest, courts held that a transferee under section 6901 (tax liability resulting from transferred assets) could deduct interest on an income tax deficiency that accrued after the transfer of the assets to which the tax related.  Haden Co. v. Commissioner, 165 F.2d 588, 591 (5th Cir. 1948), affg. a Memorandum Opinion of this Court; Merritt v. Commissioner, T.C. Memo. 1964-164.  Although perhaps not technically a deficiency of the transferee, the deficiency and interest collected from a transferee are collected pursuant to the usual deficiency procedures.  See sec. 301.6901-1(a)(1)(iii), Proced. & Admin. Regs.  Section 1.163-9T(b)(2)(iii)(C), Temporary Income Tax Regs., 52 Fed. Reg. 48410 (Dec. 22, 1983), excludes from the definition of personal interest any interest paid with respect to a C corporation's underpayment of income tax.  I assume that is because the interest is regarded as investment interest within the meaning of section 163(h)(2)(C).

Thus, the conference committee report does not exclusively support the majority's interpretation of the statute. The aspect of the report relied on by the majority is ambiguous and should be given little weight in determining what deficiency interest is personal interest. The ambiguity of the report only supports the conclusion that the regulation at issue here <u>is</u> valid, because the statute, itself, is ambiguous.

2. <u>And What About Reise, Polk, and Standing</u>?

In reaching its conclusion that section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., is invalid, the majority relies on <u>Reise v. Commissioner</u>, <u>supra</u>; <u>Polk v. Commissioner</u>, <u>supra</u>; and <u>Standing v. Commissioner</u>, <u>supra</u>, for the proposition that certain deficiency interest has been interpreted to constitute a trade or business expense for various purposes, e.g., for applying section 62(a)(1) in determining adjusted gross income. The majority apparently believes that those interpretations have been woven into the fabric of the Code in such a way that only a specific act of Congress could remove them. Majority op. p. 15. In the context in which those interpretations were made (e.g., a question arising under what is now section 62(a)(1), when the distinction between business and personal interest was otherwise unimportant), perhaps the majority has a point. The majority's focus, I submit, is too narrow. The proper allocation of indebtedness for purposes of section 163(h)(2)(A) is not limited to indebtedness giving rise to deficiency interest. Congress left it to the Secretary to interpret the statutory command--"properly allocable"--for <u>all</u>

categories of debt. The tracing method of interest allocation settled on by the Secretary is applicable across the board, not just in the case of an indebtedness arising on account of an underpayment. Indeed, it is difficult to discern a coherent scheme of interest allocation from the three cited cases. It would be a very small tail wagging a very large dog if we were to let those cases determine what is a proper method of interest allocation for all classifications of indebtedness.

### 3. Discrimination as to Form of Doing Business

The majority postulates that (1) the expenditure method of allocation found in section 1.163-8T, Temporary Income Tax Regs., "excludes an entire category of interest expense in disregard of a business connection such as exists herein" and (2) "Such a result discriminates against the individual who operates his or her business as a proprietorship instead of in corporate form where the limitations on the deduction of 'personal interest' would not apply." Majority op. pp. 16-17.

As a preliminary matter, the majority has not identified the business connection here. The majority relies on cases whose reasoning it concedes is confusing. Majority op. p. 11. Moreover, the majority has warned that, to satisfy section 163(h)(2)(A), it is insufficient simply to show that the cause of the deficiency interest is an underpayment of income tax attributable to a trade or business. Majority op. pp. 26-27. The majority has not specified the principles to be used in deciding future cases. Assuming that there are such principles, however, the majority does not explain why Congress may not

discriminate between individuals doing business as proprietorships and in corporate form.  Granted, section 163(h) applies only to individuals.  Congress has been of two minds as to the deductibility of Federal income taxes, and perhaps the distinction reflects some residual ambiguity.  Perhaps Congress views corporate deficiency interest as properly an investment expense of shareholders.  We do not know.  In any event, the majority has not convinced me that the inconsistency is unconstitutional.

E.  Conclusion

Again, the temporary regulations in question, section 1.163-8T and 9T, Temporary Income Tax Regs., resolve ambiguities and fill gaps in the statute in a permissible fashion, and for that reason, must be upheld.  NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. __, 115 S. Ct. at 813-814.

I would hold for respondent.

HAMBLEN, COHEN, WHALEN, and BEGHE, JJ., agree with this dissent.